**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE:<br><br>AIMON COOPER,<br><br>Debtor. | Chapter 7<br><br>Case No. 23-54611-BEM |
| NIDAL IBRAHIM,<br><br>Movant,<br><br>v.<br><br>AIMON COOPER,<br><br>Respondent. | Judge Ellis-Monro<br><br>Contested Matter |

**AMENDED SWORN DECLARATION OF NIDAL IBRAHIM**
**IN SUPPORT OF MOTION FOR RELIEF FROM STAY**

Nidal Ibrahim deposes and says:

1. I am the owner of real property located at 5030 Riverthur Place, Peachtree Corners, Georgia 30096 (the "Premises").

2. On July 13, 2022, I entered into a *Residential Lease Agreement* (the "Lease") with Aimon Cooper ("Debtor") for the Premises. A true and correct copy of the lease is attached hereto as Exhibit "1."

3. The Lease began on July 15, 2022, was set to end on July 14, 2024, unless terminated earlier such as by default, and required monthly payments of $3,650 per month, which were to increase to $3,950 per month on July 14, 2023.

4. Debtor has not paid the rent required by the Lease for the months of March 2023, April 2023, and May 2023, totaling unpaid rent of $10,950, and causing $540 of late charges to

1

accrue under the terms of the Lease.

5.  I have also incurred a dispossessory filing fee of $81 and $600 of legal fees in bringing a motion for relief from automatic stay, not inclusive of the $188 filing fee.

6.  Debtor has not given me any assurances that future rent payments are going to be made.

7.  Because of Debtor's nonpayment of rent, I filed a dispossessory proceeding in the Magistrate Court of Gwinnett County, Case No. 23-M-14640 (the "Dispossessory Action"), seeking possession of the Premises.

8.  At a hearing in the Dispossessory Action on May 17, 2023, the judge informed me that Debtor had filed a bankruptcy case and the Dispossessory was stayed.

9.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

This 19th day of May, 2023.

[Notarization unnecessary pursuant to 28 U.S.C. § 1746]

/s/ *Nidal Ibrahim*
NIDAL IBRAHIM

# EXHIBIT 1

5030 Riverthur Place, Peachtree Corners, Ga. 30096

# RESIDENTIAL LEASE AGREEMENT

This agreement, dated July 13, 2022, is between Nidal Ibrahim (Landlord) & Aimon Cooper (Tenant):

**1. LANDLORD:**

The Landlord(s) and/or agent(s) is/are and will be referred to in this Lease Agreement as "Landlord."

Nidal Ibrahim (Landlord)

**2. TENANTS:**

The Tenant(s) is/are:

* Aimon Cooper

* Dan Patterson

* Zephyr Smith

and will be referred to in this Lease as "Tenant(s)."

**3. RENTAL PROPERTY:**

The Landlord agrees to rent to the Tenant the property described as a(n) house located at 5030 Riverthur Place, Peachtree Corners, Ga. 30096, which will be referred to in this Lease as the "Leased Premises."

**4. TERM OF LEASE AGREEMENT:**

The Lease Agreement will begin on July 15, 2022 and will end on July 14, 2024.

**5. USE & OCCUPANCY OF PROPERTY:**

1. The only person(s) living in the Leased Premises is/are: Aimon Cooper, Dan Patterson and Zephyr Smith.
2. Any change in the occupancy will require written consent of the Landlord.
3. Any change in occupancy may be subject to an adjustment in the amount of rent.
4. The Tenant will use the Leased Premises only as a residence.

**6. AMOUNT OF RENT:**

A. The amount of the Rent is __$3,650__ to be paid monthly on the 15th of each month. This amount is valid from July 15, 2022 until July 14, 2023.

B. Rent increases to $3,950 per month beginning July 14, 2023.

Initials of all Tenants _____  _____  _____

**7. DATE RENT IS DUE:**

1. The rent is due in advance on or before the 15th day of each month. The rent due date is the date the Landlord must receive the Tenant's payment.
2. Rental payments are made payable to: Nidal Ibrahim
3. Rental payments may be delivered personally to Nidal Ibrahim or mailed to the Landlord at: Nidal Ibrahim, PO Box 922531, Norcross, Ga. 30010.

**8. LATE FEE:**

1. If the rent or any other charges are not received by the Landlord on or before 5 days after the rent due date, Tenant must pay a late fee of $180 in addition to the rent.
2. Rental payments paid late 3 times within a 12 month period creates a default of the Lease Agreement.
3. Payments received by Landlord when there are arrearages, shall be credited first, to any outstanding balance, and then applied to the current amount due.

**9. RETURNED PAYMENTS:**

1. A returned payment fee of $125 will be added for all returned payments. A personal check will not be accepted as payment to replace a returned payment.
2. If there are more than 2 instances of returned payments, Tenant(s) agree that the Landlord may require all future payments to be made only by Certified Check, Money Order, or Cash.
3. If your financial institution returns your rental payment and causes the rental payment to be late, a late charge will apply.

**10. SECURITY DEPOSIT:**

1. The Tenant(s) have paid to the Landlord a Security Deposit of _$3,650_____. Tenant has also paid last month's rent of $3,650 (meaning $300 remains outstanding for last month as rent at that time will be $3,950).
2. The Security Deposit is intended to pay the cost of damages, cleaning, excessive wear and tear, and unreturned keys once the Lease Agreement has ended and/or for any unpaid charges or attorney fees suffered by the Landlord by reason of Tenant's default of this Lease Agreement.
3. Tenant may be responsible for any unpaid charges or attorney fees, suffered by the Landlord by reason of Tenant's default of this Lease in accordance to state and local laws and regulations.
4. Under no circumstance can the Security Deposit be used as payment for rent and/or other charges due during the term of this Lease Agreement.
5. The Leased Premises must be left in good, clean condition with all trash, debris, and Tenant's personal property removed. The Leased Premises shall be left with all appliances and equipment in working order. Landlord's recovery of damages will not be limited to the amount of the Security Deposit.

**11. UTILITIES & SERVICES:**

Tenant is responsible for the following utilities and services: Electricity and Gas and Water and is required to register the utilities and services in Tenant's name. Tenant understands and agrees that essential services are to be maintained and operational at all times. Tenant agrees to be responsible for all landscaping.

Initials of all Tenants  AC  _____  _____  _____

## 12. APPLIANCES:

1.

    I.   Tenant will keep appliances provided by Landlord in good working order and shall report any malfunction to the Landlord.

        Any damage sustained due to the neglect or misuse by Tenant will become the full responsibility of the Tenant, either in the appliance repair or replacement.

    II.  Tenant agrees that the appliances are the property of the Landlord and will remain with the Leased Premises at the end of this lease term.

2. Tenant must have written approval before installing any appliance. Landlord accepts no responsibility for the maintenance, repair or upkeep of any appliance supplied by the Tenant. Tenant agrees he/she is responsible for any damage that occurs to the Leased Premises resulting from the addition of any appliance that is supplied by the Tenant.

## 13. MAINTENANCE AND REPAIRS:

Landlord shall be responsible for reasonable repairs in or about the Leased Premises unless caused by the negligence of the Tenant. Tenant will be responsible for any repairs caused by his/her negligence.

1. It is the responsibility of the Tenant to promptly notify the Landlord of the need for any such repair of which the Tenant becomes aware.
2. If any required repair is caused by the negligence of the Tenant and/or Tenant's guests, the Tenant will be fully responsible for the cost of the repair and/or replacement that may be needed.
3. The Tenant must keep the Leased Premises clean and sanitary at all times and remove all rubbish, garbage, and other waste, in a clean, tidy and sanitary manner.
4. Tenant must abide by all local recycling regulations.
5. The Tenant shall properly use and operate all electrical, cooking and plumbing fixtures and keep them clean and sanitary.
6. The Tenant is not permitted to paint, make any alterations, improvements or additions to the Leased Premises without first obtaining the written permission of the Landlord. The Landlord's permission to a particular painting, alteration, improvement, or addition shall not be deemed as consent to future painting, alterations, improvements, or additions.
7. The Tenant is responsible for removing snow and ice from stairs and walkways.

Initials of all Tenants  AC  _____  _____  _____

8. The Tenant shall maintain the lawn and landscaping by cutting grass, removing weeds and pruning trees. Tenant agrees to keep yards, walkways, patios and decks clear and to keep premises free of junk and debris. Tenant accepts liability for all landscape damage and/or replacement of such, if caused by neglect, abuse or lack of water. Tenant agrees to properly dispose of all plant debris and agrees to not leave such on the property. Landlord will consider special Tenant requests for planting and removal of plants, shrubbery and trees, but reserves the right to determine the make-up of the landscaping. Tenant agrees to mow, water, and keep the grass, lawn, flowers and shrubbery thereon in good order and condition, applying fertilizers and weed retardant as needed. If there is a failure of Tenant to keep the landscaping in good order and to follow these guidelines, Landlord reserves the right to hire a landscaping service at Tenant's expense (after a 10-day notice to perform covenant).

## 14. CONDITION OF PROPERTY:

1. The Tenant acknowledges that the Tenant has inspected the Leased Premises and at the commencement of this Lease Agreement, the interior and exterior of the Leased Premises, as well as all equipment and any appliances are found to be in an acceptable condition and in good working order. Tenant accepts and agrees to take possession of property in AS IS condition.
2. The Tenant agrees that neither the Landlord nor his agent have made promises regarding the condition of the Leased Premises.
3. The Tenant agrees to return the Leased Premises to Landlord at end of the Lease Agreement in the same condition it was at the beginning of the Lease Agreement.

## 15. PETS:

Pets are not allowed.

## 16. RULES AND REGULATIONS:

1. Late fees are strictly enforced and any unpaid fees will not be waived.
2. The Tenant may not interfere with the peaceful enjoyment of the neighbors.
3. Garbage/Trash must be taken to the curb on the scheduled day(s) of trash removal and not before.
4. The Tenant will be responsible for any fine and/or violation that is imposed on the Landlord due to the Tenant's negligence.
5. The Tenant shall abide by all Federal, State, and Local laws.
6. The Tenant shall notify the police and Landlord of any illegal activity that is witnessed in or around the Leased Premises.
7. The Tenant agrees not to use the Leased Premises for any unlawful purpose including but not limited to the sale, use or possession of illegal drugs on or around the Leased Premises.
8. The Tenant agrees to test smoke detector(s) periodically as well as maintain operational batteries at all times.
9. The Tenant must report any malfunction with smoke detector(s) immediately to Landlord. The Tenant agrees not to remove, dismantle or take any action to interfere with the operation of any smoke detector(s) installed on the Leased Premises.
10. Absolutely no hazardous materials are permitted to be in or around the Leased Premises at any time.
11. The Tenant may not use or store Kerosene or space heaters at any time in or around the Leased Premises.
12. Under no circumstance may a stove, oven or range be used as a source for heat.

Initials of all Tenants  AC  _____  _____  _____

13. Charcoal and Gas Barbecue grills may not be used inside the Leased Premises.
14. The Tenant shall use ventilating fans at all times when bathing and cooking.
15. All windows and doors must remain closed during inclement weather.
16. The Tenant shall notify Landlord of any pest control problems. Tenant is strictly responsible for any and all pest control problems, and agrees to hire contractors to service and clear the house of pest control problems if necessary.
17. The Tenant must notify Landlord of any changes in employment.
18. The basement and/or attic may not be modified for the use as living quarters without written permission of the Landlord.
19. Waterbeds and liquid furniture are not permitted without the written permission of the Landlord.
20. The Tenant must obtain written permission to install a satellite system or antenna on or around the Leased Premises.
21. The Tenant may not store or park a recreational vehicle, commercial vehicle, or watercraft on Leased Premises without Landlords written permission.
22. Tenant understands and agrees to comply with all Turnbury Oaks HOA Rules & Regulations. Tenant agrees to be responsible for any fines assessed by HOA due to Tenant's failure to comply with all HOA Rules & Regulations.

## 18. INSURANCE:

Tenant agrees to be solely responsible for any damage to or loss of the Tenant's personal property. Accordingly, the Tenant is strongly encouraged to obtain personal property/renter's insurance with an insurance company properly licensed to do business in the State. This policy must become effective on or before the beginning date of this Lease Agreement.

## 19. SECURITY NOT PROMISED:

The Tenant has inspected and acknowledges that all door and window locks, fire extinguishers, security alarm systems, smoke detectors and/or carbon monoxide detectors are in sound working order. Tenant further understands and acknowledges that although the Landlord makes every effort to make the Leased Premises safe and secure, this in no way creates a promise of security.

## 20. RIGHT OF ENTRY:

1. Landlord and/or his agents, with 24 hours written notice have the right during the term of this Lease Agreement to enter during reasonable hours to inspect the premises, make repairs or improvements or show prospective buyers and/or Tenant(s) the property.
2. In the event of an emergency, Landlord reserves the right to enter Leased Premises without notice. It is required that Landlord have a working set of keys and/or security codes to gain access to the Leased Premises.
    I. Tenants will not change, or install additional locks, bolts or security systems without the written permission of the Landlord.
    II. Unauthorized installation or changing of any locks will be replaced at the Tenant's expense.
    III. Tenant shall be responsible for any and all damages that may occur as a result of forcible entry during an emergency where there is an unauthorized placement of a lock.

Initials of all Tenants __AC__  _____  _____

### 21. ENDING OR RENEWING THE LEASE AGREEMENT:

A. At the end of the Lease term, if the Landlord or the Tenant does not give any written notice to the other party to end this Lease, it will automatically continue on a month to month basis. To terminate this Lease at the end of the Lease term or any renewal thereof, the Landlord or the Tenant must give to the other party at least __60__ days prior written notice before the last day of the Lease term or any renewal thereof.

B. In the event the premises is sold by owner to a third party or a Contract for Sale to a third party is entered into on the premises, the lease shall terminate at the option of the owner or new owner, and the tenant agrees to vacate within __60__ days notice from owner or successor owners in your lease.

### 22. NOTICES:

1. Any notice, required by the terms of this Lease Agreement shall be in writing.
2. Notices sent to the Landlord may be sent to the following:
   I. Nidal Ibrahim

      PO Box 922531, Nocross, Ga. 30010

   II. Email: nidalmag@yahoo.com

3. Notices may be given by either party to the other in any of the following ways, or any other manner provided for by law:
   I. Regular mail
   II. Personal delivery
   III. Certified or registered mail, return receipt requested
   IV. E-mail

### 23. ABANDONMENT:

If Tenant vacates the Leased Premises before the end of the Lease term without written permission from the Landlord, the Leased Premises is then considered to be abandoned and Tenant is in default of this Lease Agreement. Under these circumstances, Tenant may be responsible for damages and losses allowed by federal, state and local regulations.

### 24. LANDLORD'S REMEDIES:

If Tenant violates any part of this Lease Agreement including non-payment of rent, the Tenant is in default of this Lease Agreement. In the event of a default, the Landlord may initiate legal proceedings in accordance with local and state regulations to evict or have Tenant removed from the Leased Premises as well as seek judgment against Tenant for any monies owed to Landlord as a result of Tenant's default.

Initials of all Tenants  _____  _____

### 25. SUBORDINATION:

This Lease Agreement is subject and subordinate to any lease, financing, loans, other arrangements, or right to possession with regards to the building or land that the Landlord is obligated to now or in the future including existing and future financing, and/or loans or leases on the building and land.

### 26. CONDEMNATION:

If the whole or any part of the Leased Premises is taken by any authority having power of condemnation, this Lease Agreement will end. Tenant shall peaceably vacate the Leased Premises and remove all personal property and the lease terms will no longer apply. The Tenant, however is responsible for all rent and charges until such time that Tenant vacates the Leased Premises.

### 27. ASSIGNMENT OR SUBLEASE:

Tenant agrees not to transfer, assign or sub-lease the Leased Premises without the Landlord's written permission.

### 28. JOINT AND SEVERAL LIABILITY:

The Tenant understands and agrees that if there is more than one Tenant that has signed the Lease Agreement, each Tenant is individually and completely responsible for all obligations under the terms of the Lease Agreement.

### 29. MISREPRESENTATION:

If any information provided by Tenant in application for this Lease is found to be knowingly incorrect, untruthful and/or misleading, it is a breach of this Lease.

### 30. BINDING OF HEIRS AND ASSIGNS:

All provisions, terms and conditions of this Lease Agreement shall be binding to Tenant, Landlord, their Heirs, Assignees and Legal Successors.

### 31. SEVERABILITY:

If any part of this Lease Agreement is not valid, enforceable, binding or legal, it will not cancel or void the rest of this Lease Agreement. The remainder of the Lease Agreement will continue to be valid and enforceable by the Landlord, to the maximum extent of the laws and regulations set forth by local, state and federal governments.

### 32. GOVERNING LAW:

This Agreement shall be governed, construed and interpreted by, through and under the Laws of the State of Georgia.

Initials of all Tenants _____  _____  _____

## 33. PARAGRAPH HEADINGS:

Paragraph headings in this Lease Agreement are for convenient reference only and do not represent the rights or obligations of the Landlord or Tenant.

## 34. ENTIRE AGREEMENT:

1. Landlord and Tenant agree that this Lease Agreement and any attached Addendums, Rules and Regulations, and/or Special Terms and Conditions accurately represent all terms and agreements between the Landlord and Tenant regarding the Leased Premises.
2. Tenant acknowledges the receipt of any disclosures required by the State of Georgia as well as any disclosures required by federal, state, and local jurisdictions.

**NOTICE**: This is an important LEGAL document.

- You may have an attorney review the Lease Agreement prior to signing it.
- You are giving up certain important rights.
- If the Landlord fails to enforce any provision of this Lease Agreement, it will not constitute a waiver of any default, future default or default of the remaining provisions.
- Time is of the essence in this Lease Agreement.

By signing this Lease Agreement, the Tenant certifies that he/she has read, understood and agrees to comply with all of the terms, conditions, Rules and Regulations of this Lease Agreement including any addendums and that he/she has received the following:

1. Copies of all Addendums, HOA Rules and Regulations, Special Terms and Conditions, and Applications.

Tenant's Signature: _Aimon Cooper_ Date: 7/13/22

Landlord Signature: _Nidal Ibrahim_ Date: 7-13-22

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: <br><br> AIMON COOPER, <br><br> Debtor. | Chapter 7 <br><br> Case No. 23-54611-BEM |
| NIDAL IBRAHIM, <br><br> Movant, <br><br> v. <br><br> AIMON COOPER, <br><br> Respondent. | Judge Ellis-Monro <br><br> Contested Matter |

**CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of June, 2023, I electronically filed the foregoing *Amended Sworn Declaration of Nidal Ibrahim in Support of Motion for Relief from Stay* with the Clerk of Court using the CM/ECF system which will automatically send an e-mail notification of such filing to the parties or attorneys of record. I have also on this day caused a copy of the pleading to be placed in the first-class United States mail, postage prepaid, addressed to the following recipients:

Stanley J. Kakol, Jr.
The Law Offices of Stanley J. Kakol, Jr.
5353 Fairington Road, Suite C
Litonia, Georgia 30038
documents@sjklawfirm.com

Aimon Cooper
5030 Riverthur Place
Duluth, Georgia 30096

This 5th day of June, 2023.

ROBL LAW GROUP LLC
/s/ Michael Robl
By: Michael D. Robl
Georgia Bar No. 610905
Maxwell W. Bowen
Georgia Bar No. 719784
*Attorneys for Movant*

3754 Lavista Road, Suite 250

3

Tucker, Georgia 30084
(404) 373-5153 (telephone)
(404) 537-1761 (facsimile)
michael@roblgroup.com (e-mail)
max@roblgroup.com (email)

4