4

Deed Book 62343 Page 397
Filed and Recorded 9/29/2020 8:27:00 AM
2020-0305486
Cathelene Robinson
Clerk of Superior Court
Fulton County, GA
Participant IDs: 3606375099
7067927936

---------------------- SPACE ABOVE THIS LINE FOR RECORDING DATA ----------------------

**Return Recorded Document to:**

Mitchell C. Fogel, Esq.
Attn: Megan Staples, LA
Fogel Law Group
2500 N. Military Trail, Suite 200
Boca Raton, FL 33431

THIS DEED TO SECURE DEBT, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT IS SECURING A GUARANTY. THEREFORE, THERE IS NO NEW INDEBTEDNESS AND NO INTANGIBLE TAXES ARE DUE HEREON.

### DEED TO SECURE DEBT, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

**THIS SECURITY DEED** ("Security Instrument") is dated the _16_ day of _September_, 2020 by and between **Byung Kang and Saera Yoo, as husband and wife** (collectively, the "Guarantor") and **Fountainhead FSB LLC**, whose address is 3216 W. Lake Mary Boulevard, Lake Mary, FL 32746 ("Lender"). **TSL Group, Inc., a Georgia corporation** ("Borrower") owes Lender the principal sum of **Three Million Six Hundred Eight Thousand Three Hundred and No/100 Dollars ($3,608,300.00).** This debt is evidenced by Borrower's note to Lender dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on _Sept. 16_, **2030.** Guarantor, as the owner of or having an interest in Borrower and who benefits from Borrower's receipt of the proceeds of the Note, has unconditionally guaranteed Borrower's obligations under the Note and the other loan documents executed by Borrower in favor of Lender, as provided in that certain Unconditional Guarantee of even date herewith in favor of Lender ("Guarantee") and by this reference made a part hereof to the same extent as though set out in full herein. This Security Instrument secures the performance and observance by Guarantor of all the covenants and conditions in the Guarantee, the Note, and all obligations and indebtedness, whether now existing or hereafter arising, of Borrower and/or Guarantor to Lender. For this purpose, Guarantor does hereby grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in **Fulton County, GA:**

See attached Exhibit "A" – Legal Description

which has the address of 6495 Creekview Circle, Johns Creek, GA 30097.

**TO HAVE AND TO HOLD** this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances,

1

and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

**GUARANTOR COVENANTS** that Guarantor is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Guarantor warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

**THIS SECURITY INSTRUMENT** combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Guarantor and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Guarantor shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Guarantor shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Guarantor to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Guarantor's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Guarantor for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Guarantor interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Guarantor to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Guarantor any interest or earnings on the Funds. Guarantor and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Guarantor, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Guarantor for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Guarantor in writing, and, in such case Guarantor shall pay to Lender the amount necessary to make up the deficiency. Guarantor shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Guarantor any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note;

second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Guarantor shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Guarantor shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Guarantor shall pay them on time directly to the person owed payment. Guarantor shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Guarantor makes these payments directly, Guarantor shall promptly furnish to Lender receipts evidencing the payments.

Guarantor shall promptly discharge any lien which has priority over this Security Instrument unless Guarantor: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Guarantor a notice identifying the lien. Guarantor shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Guarantor shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Guarantor subject to Lender's approval which shall not be unreasonably withheld. If the Guarantor fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Guarantor shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Guarantor shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Guarantor.

Unless Lender and Guarantor otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Guarantor. If Guarantor abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Guarantor otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Guarantor's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Guarantor's Loan Application; Leaseholds.** Guarantor shall occupy, establish, and use the Property as Guarantor's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Guarantor's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Guarantor's control. Guarantor shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Guarantor shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Guarantor may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Guarantor's interest in the Property or other material impairment of

3

the lien created by this Security Instrument or Lender's security interest. Guarantor shall also be in default if Guarantor, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Guarantor's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Guarantor shall comply with all the provisions of the lease. If Guarantor acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

    **7.**    **Protection of Lender's Rights in the Property.** If Guarantor fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorney's fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Guarantor secured by this Security Instrument. Unless Guarantor and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Guarantor requesting payment.

    **8.**    **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Guarantor shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Guarantor shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Guarantor of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Guarantor shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Guarantor when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Guarantor shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Guarantor and Lender or applicable law.

    **9.**    **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Guarantor notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

    **10.**    **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Guarantor. In the event of a partial taking of the Property, in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Guarantor and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sum secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to the Guarantor. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Guarantor and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Guarantor, or if, after notice by Lender to Guarantor that the condemnor offers to make an award or settle a claim for damages, Guarantor fails to respond to Lender within

4

30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Guarantor otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Guarantor Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Guarantor shall not operate to release the liability of the original Guarantor or Guarantor's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Guarantor or Guarantor's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Guarantor, subject to the provisions of paragraph 17. Guarantor's covenants and agreements shall be joint and several. Any Guarantor who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Guarantor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Guarantor may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Guarantor's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Guarantor which exceeded permitted limits will be refunded to Guarantor. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Guarantor. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Guarantor provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Guarantor designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Guarantor. Any notice provided for in this Security Instrument shall be deemed to have been given to Guarantor or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Guarantor's Copy.** Guarantor shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Guarantor.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Guarantor is sold or transferred and Guarantor is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Guarantor notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Guarantor must pay all sums secured by this Security Instrument. If Guarantor fails to pay these sums prior to the

5

expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Guarantor.

**18. Guarantor's Right To Reinstate.** If Guarantor meets certain conditions, Guarantor shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Guarantor: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorney's fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Guarantor's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Guarantor, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Guarantor. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Guarantor will be given notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Guarantor shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Guarantor shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Guarantor shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Guarantor has actual knowledge. If Guarantor learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Guarantor shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Guarantor and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** Lender shall give notice to Guarantor prior to acceleration following Guarantor's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice given to Guarantor, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Guarantor of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Guarantor to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Guarantor and any other remedies permitted by applicable law. Guarantor appoints Lender the agent and attorney-in-fact for Guarantor to exercise the power

of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorney's fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Guarantor in the manner provided in paragraph 14 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Guarantor, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Guarantor hereby appoints Lender Guarantor's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Guarantor covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.

If the Property is sold pursuant to this paragraph 21, Guarantor, or any person holding possession of the Property through Guarantor, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Guarantor or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to the Guarantor. Guarantor shall pay any recordation costs.

**23. Waiver of Homestead.** Guarantor waives all rights of homestead exemption in the Property.

**24. Assumption not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Guarantor in connection therewith, shall not constitute a novation.

**25. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**26. Riders to this Security Instrument.** If one or more riders are executed by Guarantor and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| [ ] Adjustable Rate Rider | [ ] Condominium Rider | [ ] 1-4 Family Rider |
|---|---|---|
| [ ] Graduated Payment Rider | [ ] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [ ] Balloon Rider | [ ] Rate Improvement | [ ] Second Home Rider Rider |

[ X ] Other(s) [Specify]: WAIVER OF GUARANTOR'S RIGHTS AND CLOSING ATTORNEY'S AFFIDAVIT

***United States Small Business Administration.*** *The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:*

*(a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.*

*(b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.*

7

*Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.*

**GUARANTOR ACCEPTS AND AGREES** to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Guarantor and recorded with it.

**IN WITNESS WHEREOF**, Guarantor has signed and sealed this Security Instrument.

Signed, Sealed and delivered
In the presence of:

_____    _____
Witness                                                        Byung Kang

                                                                   _____
                                                                   Saera Yoo

STATE OF GEORGIA

COUNTY OF __Gwinnett__

The foregoing document was acknowledged before me by means of ☑ physical presence or ☐ online notarization, this __16__ day of __Sep__, 2020, by Byung Kang, individually and as President of TSL Group, Inc., a Georgia corporation, who is ☑ personally known to me or ☐ has produced _____ as identification.

My Commission Expires: 5/30/2022

_____
Notary Public, State of Georgia

STATE OF GEORGIA

COUNTY OF __Gwinnett__

The foregoing document was acknowledged before me by means of ☑ physical presence or ☐ online notarization, this __16__ day of __Sep__, 2020, by Saera Yoo, individually, who is ☑ personally known to me or ☐ has produced _____ as identification.

My Commission Expires: 5/30/2022

_____
Notary Public, State of Georgia

8

## EXHIBIT "A"

Property located in Fulton County, Georgia

All that tract or parcel of land lying and being in Land Lot 385 of the 1st District, 1st Section, Fulton County, Georgia being Lot 399, Brookview at Bellmoore Park (f/k/a Bellmoore Park - POD C), as shown on plat recorded in Plat Book 415, Pages 67-74, Fulton County, Georgia records, which said plat being incorporated herein by reference thereto.

AND BEING the same property conveyed to Byung Ho Kang from TPG Homes at Bellmoore, LLC by Limited Warranty Deed dated September 24, 2019 and recorded September 27, 2019 in Deed Book 60581, Page 131.

Tax Parcel No. 11 -1080-0385-298-3

Deed Book 62343 Page 406

STATE OF GEORGIA
COUNTY OF __Fulton__

**GRANTOR:** TSL GROUP, INC., A GEORGIA CORPORATION

**LENDER:** FOUNTAINHEAD SBF LLC

DATE OF SECURITY DEED: __16__ DAY OF __Sept__, 2020

## WAIVER OF GUARANTOR'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GUARANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY BORROWER WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GUARANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GUARANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GUARANTOR AND GUARANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GUARANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) WAIVES THE RIGHT TO REQUIRE THE HOLDER OF THE OBLIGATIONS GUARANTEED TO TAKE ACTION AGAINST BORROWER AS PROVIDED FOR IN O.C.G.A. 10-7-24; (5) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GUARANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GUARANTOR AS PART OF A BARGAINED-FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GUARANTOR:

Signed, Sealed and delivered
In the presence of:

_____              _____
Witness                                                       Byung Kang

                                                                    _____
                                                                    Saera Yoo

STATE OF GEORGIA

COUNTY OF __Gwinnett__

The foregoing document was acknowledged before me by means of ☒ physical presence or ☐ online notarization, this __16__ day of __Sep__, 2020, by Byung Kang, individually and as President of TSL Group, Inc., a Georgia corporation, who is ☒ personally known to me or ☐ has produced _____ as identification.

My Commission Expires: 5/30/2022

_____
Notary Public, State of Georgia

STATE OF GEORGIA

COUNTY OF __Gwinnett__

The foregoing document was acknowledged before me by means of ☒ physical presence or ☐ online notarization, this __16__ day of __Sep__, 2020, by Saera Yoo, individually, who is ☒ personally known to me or ☐ has produced _____ as identification.

My Commission Expires: 5/30/2022

_____
Notary Public, State of Georgia



Deed Book 62343 Page 408
Cathelene Robinson
Clerk of Superior Court

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Guarantor's Rights" by the Guarantor, I reviewed with and explained to the each Guarantor the terms and provisions of the Deed to Secure Debt and particularly the provisions, thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under the power of sale, together with the "Waiver of Guarantor's Rights" and informed each Guarantor of Guarantor's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Guarantor of Guarantor's rights. After said review with an explanation to each Guarantor, each Guarantor executed the Deed to Secure Debt and "Waiver of Guarantor's Rights."

Based on said review with and explanation, each Guarantor knowingly, intentionally and willingly executed the waiver of Guarantor's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Fogel Law Group

By: _____
Matthew I. Greenberg

Sworn to and subscribed before me
this 26 day of September, 2020.

_____
Notary Public
My Commission Expires:_____

DONNA M. VREELAND
NOTARY PUBLIC
STATE OF FLORIDA
Comm# GG185090
Expires 3/16/2022